STANLEY S. ARKIN et al., Appellants, v NEW YORK HELICOPTER CORP. et al., Respondents.

First Department, July 27, 1989

---

## APPEARANCES OF COUNSEL

*Stanley S. Arkin, P. C.,* for appellants.

*Robert W. Aronson* of counsel *(Deborah S. Feinstein* with him on the brief), for New York Helicopter Corp., respondent.

*Peter F. Vetro* of counsel *(James A. Gallagher, Jr.,* and

6

*Jeanne M. Gonsalves Lloyd* with him on the brief; *Gallagher & Gosseen,* attorneys), for Ogden-Allied Services Corp., respondent.

*Stephen J. Fearon* of counsel *(John E. Schutty III* with him on the brief; *Condon & Forsyth,* attorneys), for British Airways, respondent.

OPINION OF THE COURT

KUPFERMAN, J.

On February 21, 1988, plaintiffs checked two pieces of baggage with New York Helicopter Corp. at its 34th Street heliport before flying by helicopter to John F. Kennedy International Airport where they boarded British Airways flight No. 176 for a business trip to London. Upon their arrival in London, plaintiffs' checked baggage was not available. It appears that upon arrival at J.F.K. at approximately 7:40 P.M., the bags in question were unloaded from the helicopter, but not delivered to British Airways until approximately 6:10 A.M. the next morning when they were left at the British Airways baggage room, which was closed at the time. The luggage has not since been found.

At the time the baggage was checked in, it was weighed and each piece weighed less than 70 pounds, the maximum permitted under the free baggage allowance specified in British Airways Passenger Rules Tariff on file with the United States Department of Transportation.

Article 4 of the Warsaw Convention (49 US Stat 3000, reprinted in 49 USCA following § 1502 [1976]) requires an international air carrier to provide a passenger with a passenger ticket and baggage check containing certain information. For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check containing, *inter alia,* the number and weight of the package (art 4 [3] [f]). Article 4 (4) provides, in pertinent part, that "if the baggage check does not contain the particulars set out at (d), (f) and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability."

There is no dispute that the number and weight of plaintiffs' checked baggage were not noted on the passenger tickets and baggage checks delivered to plaintiffs. Defendants, nevertheless, submit that the absence of this information was insubstantial, did not prejudice plaintiffs, and does not war-

rant the drastic remedy of voiding defendants' limit of liability under the Convention, viz., $20 per kilogram or $9.07 per pound for lost baggage, unless the passenger "has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery" (art 22 [2]). Since such a declaration was not made by plaintiffs, defendants contend that their liability is limited to $1,269.80 ($9.07 per pound for 140 pounds, the maximum free allowance for both pieces).

There have been conflicting decisions on the issue with several courts finding that the carrier's failure to record the weight of a passenger's luggage is a technical and insubstantial omission. (See, *Martin v Pan Am. World Airways,* 563 F Supp 135; *Republic Natl. Bank v Eastern Airlines,* 815 F2d 232, *affg* 639 F Supp 1410; *Exim Indus. v Pan Am. World Airways,* 754 F2d 106.) Other courts, however, have strictly interpreted the Convention and held that noncompliance on the part of the carrier abrogates the limitations on its liability. (See, *Maghsoudi v Pan Am. World Airways,* 470 F Supp 1275; *Gill v Lufthansa German Airlines,* 620 F Supp 1453; *Kupferman v Pakistan Intl. Airlines,* 108 Misc 2d 485; *Schedlmayer v Trans Intl. Airlines,* 99 Misc 2d 478.)

In granting defendants' motions for partial summary judgment to dismiss the complaint to the extent that it seeks damages in excess of $1,269.80 and denying plaintiffs' cross motion to dismiss all of defendants affirmative defenses arising from the Warsaw Convention, the court below found that "[t]he better rule * * * is that which considers Article 4 a technical and formal requirement which may have had some basis when adopted in 1934 before the filing of tariffs, but which has no practical applicability today." Citing *Republic Natl. Bank v Eastern Airlines (supra)* the court held that the same considerations applied in the case at bar.

In *Republic Bank (supra),* however, where a professional courier lost a checked piece of baggage containing $2 million in currency, the Second Circuit held that where the traveler is more like a commercial shipper than the typical airline passenger, the carrier's failure strictly to comply with the requirements of article 4 did not preclude it from asserting the liability limitations of the Convention. In so ruling, the court reaffirmed and applied its holding in *Exim Indus. v Pan Am. World Airways* (754 F2d 106, *supra)* where the carrier lost two shipments of Indian silk blouses and the relevant airbills failed strictly to comply with article 8 of the Convention, the

corollary to article 4 which covers commercial shipments and air waybills. In both cases, the court found that the carrier's omissions were technical and insubstantial, that they did not prejudice the shipper and that they were of little commercial significance.

In instances involving more typical airline passengers, however, the cases, with the exception of *Martin v Pan Am. World Airways* (563 F Supp 135, *supra)* have strictly construed the requirements of article 4. In *Martin,* the court, in limiting the carrier's liability for lost baggage, relied upon the applicable CAB tariff, which deemed the weight of each piece of baggage to be the maximum allowable weight for each piece unless the actual weight is stated on the baggage check. Such tariff, the court found, "provides an alternative means of fixing the amount of liability, and the record keeping purpose of the weight requirement [of article 4] is satisfied." *(Supra,* 563 F Supp, at 140.)

We note, though, that article 23 of the Convention declares null and void any provision tending to relieve a carrier of liability or to fix a lower limit than that laid down in the Convention and that conflicting tariffs or agreements cannot survive this provision *(see, Hill v Eastern Airlines,* 103 Misc 2d 306, 308). We further note that the *Martin* case *(supra)* has not been followed in the Second Circuit or in this State and we agree with the court in *Gill v Lufthansa German Airlines* (620 F Supp 1453, *supra)* which expressly rejected the *Martin* holding and concluded that the stricter interpretation of the Warsaw Convention is the better construction. As stated there: "The language should be given its plain meaning and effect. Article 4 is straightforward. Nor is it overly demanding. Only three elements on the claim check are absolutely required to preserve liability limitations: notice, ticket number, and number and weight of the bags. Warsaw Convention, Article 4 (4). Loss of the check and the absence of the other required data do not vitiate the limitations. In view of the fact that the Warsaw Convention limits the carrier's liability and shifts a greater part of the responsibility and risk to the passenger, it is not unreasonable or overly technical to require the carrier to comply with the minimum requirements plainly set out by the Convention." *(Supra,* 620 F Supp, at 1456; *see also, Vekris v Peoples Express Airlines,* 707 F Supp 675, 678.)

Most recently, in *Chan v Korean Air Lines* (490 US —, 109 S Ct 1676 [Apr. 18, 1989]), a wrongful death action arising

from the shooting down of KAL flight 007 by a Soviet fighter, the Supreme Court held that an air carrier did not lose the benefit of the limitation on damages for passenger injury or death provided by the Convention by delivery of a defective ticket, which failed to provide notice of that limitation in the 10-point type size required by the Montreal Agreement, a private accord among international air carriers. In so ruling, the court compared the lack of explicit sanctions in article 3 (2) for delivery of a defective ticket with the explicit sanction imposed in article 4 (4) for a carrier's failure to include in its baggage check certain particulars, including the number and weight of the packages *(supra,* 490 US, at —, 109 S Ct, at 1682). In persuasive language, the court stated: "We must thus be governed by the text—solemnly adopted by the governments of many separate nations—whatever conclusions might be drawn from the intricate drafting history that petitioners and the Solicitor General have brought to our attention. The latter may of course be consulted to elucidate a text that is ambiguous, see, *e.g., Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). But where the text is clear, as it is here, we have no power to insert an amendment." *(Supra,* 490 US, at —, 109 S Ct, at 1683-1684; *see also,* Edelman, *Admiralty Law, Passenger Ticket Limitation,* NYLJ, May 5, 1989, at 3, col 1.)

Accordingly, the order of the Supreme Court, New York County (Helen E. Freedman, J.), entered October 24, 1988, which granted defendants' motions for partial summary judgment dismissing the complaint to the extent that it seeks damages in excess of $1,269.80 and denied plaintiffs' cross motion to dismiss all of defendants' affirmative defenses arising from the Warsaw Convention should be reversed, on the law, and defendants' motions denied, plaintiffs' cross motion granted and defendants' affirmative defenses based upon the Warsaw Convention dismissed, with costs.

MURPHY, P. J., CARRO, MILONAS and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on October 24, 1988, unanimously reversed, on the law, and defendants' motions denied, plaintiffs' cross motion granted and defendants' affirmative defenses based upon the Warsaw Convention dismissed. Appellants shall recover of respondents one bill of $250 costs and disbursements of this appeal.