**Janine PERRI, Plaintiff,**

v.

**DELTA AIR LINES, INC. and Aerovias de Mexico, S.A. de C.V., Defendants.**

**No. 98 CV 7528.**

United States District Court,
E.D. New York.

July 21, 2000.

New York to Mexico. Plaintiff claims that the bags and their contents were worth approximately $16,000. Plaintiff and defendants have now filed cross-motions for partial summary judgment. The defendants' liability under the Warsaw Convention [1] is not contested. The issue presented in the parties' motions is whether, as defendants claim, the Convention limits their liability to $20.00 per kilogram, or $9.07 per pound, of baggage. Plaintiff alleges that the defendants failed to comply with certain technical prerequisites under the Convention—namely, that they failed to indicate the weight of plaintiff's luggage on her baggage claim check—and that she may, therefore, recover the full value of her lost belongings.

## FACTS

Unless otherwise indicated, the following facts are undisputed.

On July 17, 1998, plaintiff left for a Mexican vacation on a flight that departed from John F. Kennedy International Airport ("JFK") in Jamaica, New York. She caught a connecting Aeromexico flight in Mexico City.[2] When she arrived at her final destination, Oaxaca, Mexico, she discovered that the two bags that she had checked with Delta in New York were missing. Plaintiff never found her luggage, and she now claims that the two bags and their contents, consisting primarily of clothing and jewelry, were worth slightly over $16,000.[3]

William J. Coury, Hagan, Coury & Assoc., Brooklyn, NY, for plaintiff.

Michael J. Holland, Condon & Forsyth LLP, New York, NY, for defendants.

### ORDER

GERSHON, District Judge.

Plaintiff Janine Perri brings this action against defendants Delta Air Lines Inc. ("Delta") and Aerovias de Mexico S.A. de C.V. ("Aeromexico") to recover the value of two pieces of luggage that were lost while she was traveling on vacation from

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. 876, reprinted in note following 49 U.S.C. § 40105.

2. The parties appear to dispute which carrier flew plaintiff on the first leg of her trip from New York to Mexico City, but neither side argues that the dispute is material. According to defendants, although Delta issued plaintiff's tickets and handled her luggage in New York, an Aeromexico plane actually transported her on both legs of her trip pursuant to what is referred to as a "codeshare agreement." Plaintiff agrees with defendants' account except that she states she flew from New York to Mexico City on a Delta flight. This disagreement is immaterial and does not preclude summary judgment because, under either set of facts, Delta and Aeromexico would constitute successive carriers and would be jointly and severally liable. *See* Warsaw Convention, Ch. III, Art. 30(3); *id.* at Ch. I, Art. 1(3); *Da Rosa v. Tap Air Portugal*, 796 F.Supp. 1508, 1509 (S.D.Fla.1992).

3. Although plaintiff seeks $25,000 in damages in her complaint, the itemized list that she provided to defendants approximately two weeks after her bags were lost indicates that

When plaintiff checked her luggage at the Delta counter in JFK, she received an Aeromexico baggage claim stub for each piece of her luggage. The Delta ticket agents weighed plaintiff's bags and recorded the total weight of 30 kilograms on the manifest for plaintiff's flight. The ticket agents did not write the weight of plaintiff's luggage directly on her claim stubs or on her passenger ticket, a practice that Delta admits was "routine check-in procedure[ ]."

The passenger ticket that was issued to plaintiff by Delta contained a summary of the limited liability provisions of the Warsaw Convention. Printed under the heading "Notice of Baggage Liability Limitations," the following warning appeared: "Liability for loss, delay or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: (1) for most international travel (including domestic portions of international journeys) to approximately $9.07 per pound ($20.00 per kilo) for checked baggage." Plaintiff did not declare the value of her luggage to the Delta ticket agents nor did she pay an additional charge when she checked her two bags.

In addition to the above-described notice, a sign at the Delta check-in counter directed passengers to copies of the tariffs that defendants had filed with the U.S. Department of Transportation. The tariffs for both defendant airlines provide that the carriers' liability for lost luggage is limited to $20.00 per kilogram unless a higher value is declared in advance and additional charges are paid. The tariffs also state that for the purposes of calculating the carriers' liability under the Convention, the weight of each piece of checked baggage is deemed to be the maximum allowable weight for each piece (*i.e.*, 32 kilograms), unless the weight is otherwise stated on the baggage check.

On July 27, 1998, plaintiff wrote to Aeromexico, describing her loss, and on July 30, 1998, she completed a Delta claim form. She commenced this action on or about November 17, 1998 in the Civil Court of the City of New York, Kings County. Defendants removed the case to this court on December 7, 1998.

## DISCUSSION

### I. The Standard For Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *See id.* A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Here, the relevant facts are not in dispute. Based on those facts, plaintiff's mo-

the value of the clothing and jewelry was slightly more than $16,000.

tion for partial summary judgment is granted and defendants' motion is denied.

## II. Relevant Provisions of the Warsaw Convention

■ It is undisputed that plaintiff's loss is governed by the Warsaw Convention. Under this treaty, a carrier is presumptively liable for baggage that is lost while in its charge. *See* Warsaw Convention, Ch. III, Art. 18. In exchange for this presumption, the Convention limits a carrier's liability for lost luggage to $20.00 per kilogram unless the passenger has made "a special declaration of the value at delivery and has paid a supplementary sum if the case so requires." *Id.*, Ch. III, Art. 22(2).

■ In order to avail itself of these liability limitations, a carrier must first satisfy several conditions. Specifically, the carrier must deliver a baggage check to the passenger and that baggage check must contain the number of the passenger ticket, the number and weight of packages, and a statement that the transportation is subject to the liability rules of the Convention. "[I]f the baggage check does not contain" these particulars, "the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability." *Id.*, Ch. II, Sect. II, Art. 4(4).

## III. Applicability of the Convention's Limitations on Liability

Defendants argue that they are entitled to limit their exposure despite the fact that they failed to properly record the weight of plaintiff's bags on her claim check. In support of this position, they rely primarily on *Republic Nat'l Bank v. Eastern Airlines, Inc.*, 815 F.2d 232 (2d Cir.1987). In *Republic*, the plaintiff bank employed a courier to accompany two bags of currency, one containing $2 million and the other $4.5 million, on a flight from New York to South America. Upon arriving in Peru, the courier discovered that the $2 million bag was missing. The baggage claim stub

for the lost bag did not contain any of the information required by Article 4 of the Convention, including the weight of the luggage. Despite this omission, the Second Circuit held that the plaintiff had not been prejudiced and that the carrier could, therefore, limit its liability. The court explained, however, that its liberal interpretation of the treaty was appropriate "where ... the traveler is more like a commercial shipper than the typical airline passenger." *Id.* at 237.

■ Here, of course, plaintiff is a typical airline passenger, and cases decided in this Circuit after *Republic* have refused to expand its reasoning to non-commercial passengers like Ms. Perri. *See, e.g., Siben v. American Airlines, Inc.*, 913 F.Supp. 271, 277 (S.D.N.Y.1996); *Vekris v. Peoples Express Airlines, Inc.*, 707 F.Supp. 675, 678 (S.D.N.Y.1988). Moreover, after *Republic* was decided, the U.S. Supreme Court re-emphasized its view that unambiguous provisions of the Warsaw Convention must be literally construed. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134–35, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) ("We must thus be governed by the text—solemnly adopted by the governments of many separate nations ... where the text is clear ... we have no power to insert an amendment") (internal citations omitted). The Second Circuit itself, relying on *Chan*, reiterated this same principle a few years later. *See Maritime Ins. Co. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993) (even if a judicial interpretation is "sensible," courts should "refrain from altering even slightly the plain, unambiguous language of a treaty negotiated among diverse sovereign nations") (citations omitted).

As a result, I conclude that the baggage weight requirement is not ambiguous and, thus, that the defendants' failure to comply with that provision cannot be excused. Since *Chan*, the only two circuit courts that have addressed this issue, both in cases involving non-commercial passen-

gers, have reached the same conclusion, see *Cruz v. American Airlines, Inc.*, 193 F.3d 526, 529–30 (D.C.Cir.1999), *reh'g and reh'g en banc denied*, (Nov. 26, 1999), *and cert. denied*, — U.S. ——, 120 S.Ct. 2025, 146 L.Ed.2d 975 (2000); *Spanner v. United Airlines, Inc.*, 177 F.3d 1173, 1176 (9th Cir.1999), as have the district courts in this Circuit. *See, e.g., Siben*, 913 F.Supp. at 277; *Tchokponhove v. Air Afrique*, 953 F.Supp. 79, 83–84 (S.D.N.Y.1996); *Chukwuma v. Groupe Air France, Inc.*, 767 F.Supp. 43, 47–48 (S.D.N.Y.1991), *aff'd*, 962 F.2d 2 (2d Cir.1992); *Vekris*, 707 F.Supp. at 678.

Simply put, Article 4 mandates that a baggage claim check "shall contain ... [t]he number and weight of the packages." If the baggage check does not contain these particulars, "the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability." Thus, because the defendants did not indicate the weight of plaintiff's luggage on her claim check, they cannot limit their liability under Article 22.

■ The ratification of Montreal Protocol No. 4,[4] which recently eliminated the requirement that a carrier record the number and weight of a passenger's baggage on the claim check, does not alter this result. Montreal Protocol No. 4 took effect in the United States on March 4, 1999, well after plaintiff's loss and the filing of this action. As a result, although the parties agree that, in future cases, a carrier will not surrender its limited liability simply by failing to record the weight of a passenger's luggage on the claim check, they disagree on what, if any, impact the Montreal Protocol has on this case. Plaintiff argues that Montreal Protocol No. 4 amended the prior language of the Convention and, thus, cannot be applied retroactively. Defendants claim that Montreal Protocol No. 4 merely clarified existing law.

The only court that has addressed this question found that "Montreal Protocol 4's luggage ticket provisions clearly amend prior law; as such they cannot possibly be given retroactive effect by being labeled a 'clarification.'" *Cruz*, 193 F.3d at 530.[5] I agree. The pre-Montreal Protocol language of the Warsaw Convention precludes a carrier from limiting its liability unless it records the weight of the passenger's luggage on the claim check. Nothing in the language of the amendment suggests that the total elimination of such a requirement was nothing more than a clarification of the law.[6] Nor does the legislative history that accompanied the amendment to Article 4 support a contrary view. According to a report prepared by the Senate Committee on Foreign Relations, "The revised provisions on registered baggage documentation in Article 4 ... substantially reduce[ ] the number of entries required on each baggage check. These changes clear the way for more efficient

**4.** Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929, as amended by the Protocol done at the Hague on September 8, 1955, reprinted in S. Exec. Rep. 105–20 (1998).

**5.** The cases that defendants cite in support of their claim to the contrary all interpreted sections of the Montreal Protocol that are not at issue in this case. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 175, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (finding that the revisions made by Montreal Protocol No. 4 to Article 24's exclusivity provision merely clarified existing law); *Cortes v.*

*American Airlines, Inc.*, 177 F.3d 1272, 1290 (11th Cir.) (Montreal Protocol No. 4 clarifies definition of "willful misconduct" under Article 25), *reh'g and reh'g en banc denied*, 193 F.3d 525 (1999), *and cert. denied*, — U.S. ——, 120 S.Ct. 980, 145 L.Ed.2d 930 (2000).

**6.** Despite defendants' contention that Montreal Protocol No. 4 merely adopted the reasoning of *Republic* and similar cases, those cases did not hold that the baggage weight requirement was irrelevant. While that may have been the practical impact of their rulings, those courts found that the failure to write the baggage weight on the claim ticket would be excused where the passenger had not been prejudiced by the omission.

check-in procedures." S. Exec. Rep. 105–20 (1998). This language suggests that the purpose behind the amendment to Article 4 was to streamline passenger check-in, not to resolve an ambiguity in the law. As a result, I find that Montreal Protocol No. 4 amended Article 4 and that this substantive change in the law cannot be applied retroactively in this case.

## CONCLUSION

For the foregoing reasons, I find that defendants cannot as a matter of law invoke the limited liability provisions of the Warsaw Convention. Thus, defendants' motion for partial summary judgment is denied, and plaintiff's motion is granted. The parties are directed to advise the Court within three weeks from the date of this Order whether they have been able to agree on the calculation of plaintiff's damages.

**SO ORDERED.**